Mass Claim
Filed:  December 22, 2014
Brooklyn District Court, NY

RECEIVED
DEC 2 2 2014
PRO SE OFFICE

1

2                      **NEW YORK EASTERN DISTRICT COURT**

3                            **BROOKLYN, NEW YORK**

4                       **COMMON LAW COURT OF RECORD**

5                       **CV 14-7425**

6                CASE No. _____

7    CLAIMANTS/ RELATORS

8    Connie P. Mele                    **CHEN, J.**

9    Michael Douglas

10   Yvonne Singleton

11   Phillip Elllis

12   Janette Bowen

13   Leveda Curry                       **GO, M.J.**

14   Ellie Stewart

15   Geane Hewitt Gittens

16   Charles Sidden          **Nature of verified case: claims**

17

18   Tres Peel                    **JURY TRIAL DEMANDED**

19   Deborah Alex-Saunders         **claimants,**

20                        **private prosecutors**

21    Deidre E. Paris

22   Delilah Burrowes

23   Idrissa Gaye

24     _____

Page 1

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

25   DEFENDANTS

26   FEDERAL RESERVE BOARD

27

28   1.      Marianne Lake, individual and official capacity  as Chief Financial Officer,

29   2.      Robert Bentley,  individual and official capacity  as Chief Financial Officer

30   3.      James Mackey, individual and official capacity  as Chief Financial Officer

31   4.      John Gerspach, individual and official capacity  as Chief Financial Officer

32   5.      Bruce R. Thompson, individual and official capacity as Chief Financial Officer

33   6.      Bruce Rose CEO. individual and official capacity  as Chief Financial Officer

34   7.      Aleem  Gillani,  individual and official capacity  as Chief Financial Officer

35   8.      DARYL Bible, individual and official capacity  as Chief Financial Officer

36   9.      Kelly King, individual and official capacity  as Executive  Officer

37   10.     John Shrewsberry, individual and official capacity  as Chief Financial Officer

38   11.     John V. Britti, individual and official capacity  as Chief Financial Officer

39   12.     Christopher Halmy individual and official capacity  as Chief Financial Officer

40   13.     Janet McClusky individual and official capacity  as Chief Financial Officer]

41   14.     Paul Ince individual and official capacity  as Chief Financial Officer]

42   15.     Lewis Howard Wirshba individual and official capacity  as Chief Financial Officer]

43   16      TAJ J. BINDRA  individual and official capacity  as Chief Financial Officer

44   17.     ANDY CECERE, individual and official capacity as Chief Financial Officer

45   18.     Stephen KRAUSE individual and official capacity  as Chief Financial Officer

46   19.  MARCUS SCHENCK individual and official capacity  as Chief Financial Officer

47   20.. DARREN TANGEN, individual and official capacity as Chief Financial Officer

48   JOHN DOE, WRI CAPITAL, individual and official capacity as Executive Officer

49   JOHN DOES  1-100

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

50

51  Federal Reserve Board has provided billions in bailouts for banks without transparency or provision to
52  the public.  No direct bailout exist for distribution to the public issuers of notes that create the basis for
53  bank borrowing as revealed in the Fed custody forms . It is by full faith and credit in the US Dept of
54  Treasury that coordinates the functions of the Federal Reserve System. But we the people are left in the
55  cold without receipt of reversionary interest incurred from fractionalized banking.   Even the national
56  settlements are trickled down from government agencies administration fees and poor notifications to
57  the public.  The least, that we are seeking is improved training and supervision of the CFOs of Federal
58  Reserve member Banks and remedies thereof. It is obvious from several publicized investigations that
59  there is inadequate oversight of these corporations from the Federal Reserve System.

60  We are seeking both damages and injunctive relief in both individual and official capacity of CFO s and
61  Executive officers. These defendants do not have clean hands and continue to damage the public.

62  No doubt, some of the defendants have changed corporations but without public outcry may continue
63  in their same pattern and practice of corporate malfeasance that have caused millions of dollars in fines
64  and consent orders from the various government agencies such as DOJ, OCC, HUD, State Depts. etc.

65  Clearly, CFO s and executive officers should be held responsible due to they should have known (or did
66  know) that they were violating public and private rights as outlined by Sarbanes Oxley Act.

67  (1) The defendants directly participated making of financial policies and management for their
68  companies.

69  (2) The defendants learned of the violations of homeowners rights and failed to do anything to fix the
70  situation as revealed in several DOJ consent orders.

71  (3) The defendants created policy or custom in pattern and practice encouraging the illegal acts in
72  conflicting annual reports  EXAMPLE ( hiding transfer fees)

73  (4) The defendants failed to adequately train or supervise meeting licensing standards in their business
74  affiliates.

75

76                                    **JUDICIAL NOTICE**

77                                    Cf. Rule 8 and Rule 10:

78  A party may state as many separate claims or defenses as it has, regardless of consistency. No technical
79                                    form is required.

80              All federal district courts are courts of common law jurisdiction. Cf.

81                    We, require: a 'court of record'; 'trial by jury';

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

82      Alternative the 12 plus claimants of sovereign status qualify to be a petit jury as they stand.

83

# Introduction:  CFO CORPORATE SHELL GAME

## What happen to reversionary interest due the public?

86   We, the people in this mass claim (not seeking class action certification) are seeking reparations

87   from the helm of personnel of banks  and institutions that rallied over profit rather than financial

88   stability for the public. We believe that the Chief Financial Officers knew or should have known

89   that toxic transactions using unlicensed broker/dealers, untrained  and pretender lenders along

90   with concealment of fractionalized lending would lead to corporate malfeasance and financial

91   disasters.  CFO defendants have played a shell game.  These CFOs have been hired from

92   company to company leaving behind them a trail of fines, bankruptcies, insolvency and broken

93   home owners.   They must be held accountable.Discovery from this mass claim will reveal

94   company after company in pattern, practice and collusion that violated financial

95   regulations and fraud that led to bankruptcy and insolvency.  But, nothing for the people except

96   foreclosures and lifetime debt: not even a return of interest on the extra monies made off the

97   issuers and makers  of the notes that were as used assets for the banks.  "Ironically the banks

98   positioned to receive these double-digit earnings include some of those we bailed out with our

99   tax dollars in the previous year, such as GMAC, JP Morgan and US Bancorp.

100  While this all makes for a potentially stronger rally on Wall Street, it does nothing to help

101  citizens struggling on a daily basis to maintain their homes, their health insurance and their jobs.

102  ''The term malfeasance is synonymous with misconduct, misbehavior, misdoing and

103  wrongdoing. Corporations and legislators who continue on the path of malfeasance must be

104  brought to justice."

105  One of the earliest robber barons noted in the book Corporate Malfeasance – And Why It

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

106   Corrupts, was J.P. Morgan. He set a course years ago that has been followed by many of today's

107   billionaires: mergers, acquisitions and consolidations and deals that heap riches on those who

108   mold them but wreak havoc on competitors, workers and local economies. These transactions

109   empower a few individuals with control of resources and markets; the CEOs who end up at the

110   top of the conglomerates are in positions to exert excessive influence over government officials,

111   the press and buying trends. Because such deals are made on paper – in boardrooms, law offices

112   and at investment banks – they seldom produce tangible goods or services or create new jobs.

113   These paper transactions have played an ever-increasing role in the U.S. economy in recent

114   decades and are a major contributor to the failing of our economy. "Corporate Malfeasance –

115   And Why It Corrupts June 15, 2012, John Perkins

116

117

118                                         **NATURE OF THE ACTION**

119   This action is about living souls that are representatives of the public that suffered one of the most

120   precipitous corporate meltdowns in U.S. history.  We were wronged by well compensated professional

121   gatekeepers, who utterly failed in their responsibilities to the investing public by commiting corporate

122   malfeasance.  Wronged claimants demand that defendants  appear in court and provide remedy to our

123   verified claims. REFUSUAL TO ACCEPT OF  RULES FOR APPEARANCE,SHALL BE  A TACIT ACQUIRESENCE..

124   These companies, agencies  and the gatekeepers, particularly chief  financial officers who failed to do

125   their jobs because they aided and abetted concealment of  hundreds of millions of dollars reversionary

126   interest and receivables owed to the public as proven  by off balance sheet assets.

127   Defendants' misconduct DIRECTLY connects with the financial and emotional harm that the claimant

128   suffered as a result of their conduct of pirating homeowner funds and failure to distribute claim money.

129

130                                              **PARTIES**

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

131   Claimants are  natural living beings that live diversely among the united states of America and have by

132   status  declared management over the artificial person (Title 18 USC sec. 134).

133   Upon information and belief Defendants, are real persons, Chief Financial Officers that used their job

134    positions to commit corporate malfeasances fronting  artificial foreign corporations.

135   Upon information and belief Defendants, Law Offices  as a foreign corporations,

136   And debt collectors doing business both intra and interstate among this united states of America.

137   Upon information and belief Defendants, are enjoined by their pattern and practices in Aiding and

138   abetting  in RICO activities.

139

140

141                                             **CLAIMANTS**

142   The Claimants are real man (s) and woman(s) that are We the People, Grantors seeking redress and

143   remedy among the policies of the united States corporation,  ITS franchise corporations and employees.

144    Claimants assert that they, as  issuers, have a legal interest in the "note" and, in addition, that they

145   have  reversionary interest in it. Also, as the beneficiaries of the trust, have an equitable interest in the

146    "note". Homeowners , as lessees, claim possessory interest; but  have  lost the use of the "note".

147    Claimants  assert that they, under Originator agreement to buyback  the "note" , is contractually

148   entitled to acquire the proprietary title in the future, and that defendants ' conduct has caused  them to

149    lose the "note" and the profits they should have made from it. All allege that they have suffered

150   economic losses as a result of defendants' conduct. 26 U.S. Code § 673 - Reversionary interests

151    That the Claimants are espousing a claim-centric approach to obtaining redress from the corporations

152   and/or sub franchises so chartered by the United States Federal Corporation. In addition to acquiring

153   the rights of a purchaser, a protected purchaser also acquires its interest in the security free of any

154   adverse claim.

155   Claimants are man (s) and wo-man(s) are grantors who have reserved their rights without recourse  and

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

156    expressly declared their rights so recognized by the parent US corporation.

157

158                                    **Defendants**

159    The defendants are the Chief Financial Officer (CFO) who are responsible to the company's Board of

160    Directors for all accounting and financial matters. They establish company-wide objectives,

161    policies, procedures, processes, programs, and practices to assure the company of a continuously sound

162    financial accounting structure. So for Any CEO or CFO who "recklessly" violates his or her certification of

163    the company's financial statement or t wo or more persons who conspire to commit any offense against or

164    to defraud the U.S. or its agencies, such as reporting taxes.. Fines and/or up to 10 years imprisonment

165    exist, So these defendants, who   fail to disclose reversionary interests and conceal the claim for

166    recovery of such funds – is a concealment of the record not only to the issuers/makers of the notes that

167    were used for investments but  a tax avoidance to the IRS.

168    Any person who "corruptly" alters, destroys, conceals, etc., any records or documents with the intent of

169    impairing the integrity of the record or document for use in an official proceeding. Fine and/or up to 20

170    years imprisonment.

171    The Federal Reserve System aided and abetted these defendants by fractionalizing the promissory

172    notes of homeowners by nine times knowing that the Banks themselves were the real borrowers.

173    The  System has three organization levels: member banks, Federal Reserve Banks, and the Board of

174    Governors.  Member banks of these defendants joined the Federal Reserve System (FRS) to

175     enrich themselves and their shareholders at the expense of the note issuers by failing to disclose

176    and openly offer access to the reversionary interest.   Fractionized bank of 9x used by these

177    defendants are a violation of 12 U.S. Code § 301 - Powers and duties of board of directors; suspension of

178    member bank for undue use of bank credit. (Discovery)

179                                    **Jurisdiction**

180    Federal Court. Cf.  See 28 U.S.C. § 1331et se Federal Court. See 28 U.S.C. § 1331et seq

181
182    Defendants conducts a significant amount of business in New York. All corporations that hired

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

183
184    the defendants are members of Wall Street, New York located in the financial center of the
185
186    world.
187
188    Moreover, throughout the RICO period of ten years, the defendants have maintained offices and
189
190    conducted business in New York directly relating to matters alleged herein by, among other
191
192    things, making numerous wire transfers into and out of bank accounts maintained by defendants
193
194    at banks in New York.
195
196    That, Claimants raise federal questions that involve the violation of federal laws.et.  Federal
197
198    Reserve Act of 1913, Sarbanes-Oxley Act., RICO, etc.
199
200    That, Diversity exists due to Claimants and Defendants are citizens of different
201
202    states and the amount in controversy exceeds the sum or value of $75,000. exclusive of interest
203
204    and costs.
205
206    That, New York Federal Eastern  District court is one of common law jurisdiction and a court of
207
208    record organized under the lawful right committed by oath to abide the US Constitution.
209

210                                    **FACTUAL CLAIMS**

211    The proponent of the civil RICO claim shall file and serve [within 90 days of summons }.  A

212    case statement that shall include the facts relied on to initiate the RICO claim. In particular, the

213    statement shall use the numbers and letters set forth below, unless filed as part of an amended

214    and restated pleading (in which latter case, the allegations of the amended and restated pleading

215    shall reasonably follow the defendants and corporate malfeasance organizations  set out forth,

216     and shall state in detail and with specificity before a hearing for trial of sovereign jury.

217

218                                    THE PRIVACY ACT

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

219    Claimants are the issuer and maker of promissory notes from unilateral contracts. Per the

220    UCC 1-201(32,33), these claimants are protector purchasers.  Names of the claimants, social

221    security numbers and reversionary interest were misappropriated in violation of  THE PRIVACY

222    ACT.

223                                   **Reparations**

224    Foreclosures have drained nearly $2 trillion dollars in lost property value from nearby

225    households. Half of this spillover cost has been incurred by communities of color. - See more at:

226    http://www.responsiblelending.org/mortgage-lending/research-analysis/collateral-damage.

227    $1.95 trillion in property value has been lost or will be lost by residents who live close to

228    foreclosed properties. '

229    Spillover costs will drain $1 trillion in home equity from minority neighborhoods. This estimate

230     does not include the total loss in home equity resulting from the foreclosure crisis (est. $7
231    trillion)

232    Also doesn't include losses in tax revenue, the increased costs of managing vacant properties and

233     non-financial spillover costs, such as increased crime, lower school performance by children and

234    neighborhood blight.

235    The right to reparation is a well-established principle of international law. The International Law

236    'Commission affirmed this principle in its 53rd Session when it adopted the <u>draft articles on</u>
237    <u>responsibility of States for internationally wrongful acts.(3)</u> The right is also firmly embodied in

238    international human rights treaties and declarative instruments <u>(4)</u> and has been further refined

239    by the jurisprudence of a large number of international and regional courts, as well as other

240    treaty bodies and complaints mechanisms.)

241

242                               **Claim in recoupment**

243    Mandatory right of claim when a "creditor to offset a mutual debt owing by such creditor to the

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

244   debtor that arose before the commencement of the case...." 11 U.S.C. §553(a). The requisite

245   elements of a §553 setoff are as follows: (1) the creditor holds a claim against the debtor that

246   arose before the commencement of the case; (2) the creditor owes a debt to the debtor that also

247   arose before the commencement of the case; (3) the claim and debt are mutual; and (4) the claim

248   and debt are each valid and enforceable. In re Steines, 285 B.R. 360, 362 (Bankr. D. N.J. 2002).

249   Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a

250   mutual, prepetition claim against the creditor. See 11 U.S.C. §506(a

251

252               **TORTIOUS INTERFERENCE WITH GOODS: TITLETO SUE**

253   The claimants goods in question are the promissory notes that were converted into securities

254   without disclosure or consent.  As a result they suffered tortious interference with their goods.

255   The claimants losses suffered as a result of wrongful interference with goods where tortfeasor

256   commits negligence, conversion, trespass or detinue by acts of damage, destruction or removal of

257   goods, there may be various others who  suffer adverse consequences, economic or otherwise, as

258   a result. This class of  affected people may be large and their interests in the goods in question

259   may be diverse. Interests of a legal, beneficial, proprietary and possessory kind

260   may subsist concurrently in the same goods; and the holders of these interests

261   may be affected in different ways by the interference with them. There may

262   be others who lack vested interests, but have expectations of financial gain

263   from the goods, based on contractual or other connections with them.

264   What principles apply in determining who, from a potentially large class of

265   plaintiffs, has a sufficient interest to claim for losses resulting from wrongful

266   interference with the goods.  Because it is possession and not ownership which is protected, it is
267
268   not necessary to show ownership to establish a right to sue.
269
270

Mass Claim
Filed:  December 22, 2014
Brooklyn District Court, NY

271                              Quantum meruit

272    Defendants received unjust enrichment by hugh bonuses extended from their ultra ego, artificial

273    corporations.  A discovery of fees, charges and affiliate agreements prove the enrichment. The

274     reversionary interest was used at the expense of the claimant without disclosure. Millions of

275    illegal foreclosures and collection of unlawful debt requires restitution.

276

277                          CORPORATE MALFEASANCE

278    Defendant CFOs lost millions in transactions that allowed the banks to take financial advantage

279    of toxic transactions in derivatives of notes that held reversionary interest . Congress and the

280    Securities and Exchange Commission reacted strongly, issuing reforms to Section 406 of the

281    Sarbanes-Oxley Act. Under this section, companies must disclose whether they have ethics codes

282    and whether it is possible for directors or officers to waive them. It also requires that the

283    requirement apply to all employees of the company. The codes must be made public. CFOs have

284    failed to make the reversionary interest known to the issuers of the notes, that they used to

285    borrow money from.  Corporate ethics goes beyond good behavior internally and with

286    stockholders and customers. It means giving something back to the community in which it

287    operate.

288

289

290                          Cause of Action

291    The CFO, defendants of the identified corporation wronged the live claimants by using their
292
293    office to violate our properties and interference of our goods.
294
295    Specific remedy sought by the claimant is the return of reversionary interests from the notes
296
297    claimants issued that enriched their positions  and their unlawful conduct in their illegal
298

Mass Claim
Filed:  December 22, 2014
Brooklyn District Court, NY

299   collection of debt that is not true  ie: Defendants need to  cease action against claimants  and pay
300
301   fees charged daily until the party ends the matter.
302

303   The defendants must be sworn or affirmed to be true to their answers – ie:  they must appear in

304   court to make a verifiable claim, affidavits will not do, and attorneys cannot speak for them.

305   Lawful money is demanded for all transactions 12 USC 411".

306

307   # FIRST CAUSE OF ACTION

308   All presumptions of death of claimant are rebutted by grantors assertion ;

309   # SECOND CAUSE OF ACTION

310   Return property of all reversionary interest in equitable title as virtual representatives of
311   Certificate of Live Birth ;

312   # THIRD  CAUSE OF ACTION

313   Partial assignment of said property to United States Treasury for full discharge of

314   remaining balance sum certain amount stated on bill of evidence presented by claimants

315   # FOURTH CAUSE OF ACTION

316   Said notes  were received by defendants on closing date of transactions;

317   # FIFTH CAUSE OF ACTION

318   Defendants have not returned said reversionary interest to claimant within stipulated time

319   if Said note was  dishonored for cause by the United States Treasury;

320   # SIXTH  CAUSE OF ACTION

321   Said property has not been credited to claimants account for within stipulated Time;

322   # SEVEN CAUSE OF ACTION

323   Claimants require the immediate restoration of said property;

Mass Claim
Filed:  December 22, 2014
Brooklyn District Court, NY

324      # EIGHT CAUSE OF ACTION

325     And require trespass and harm in the amount of federal remedy of three times of amount re: said
326     property;

327      # NINE CAUSE OF ACTION

328     And require damages in the loss amount of said  property;

329      # TEN CAUSE OF ACTION

330     And require lawful money and full discharge for all transactions;

331      # ELEVEN CAUSE OF ACTION

332     And require a jury of peers to judge this matter without bias and conflict of interest;

333      # TWELVE CAUSE OF ACTION

334     that we, say here, and will verify in open court, that all herein be true; all rights reserved,

335

336

337      # REQUEST FOR ADMISSIONS

338     SET NUMBER: One1

339     TO All DEFENDANTS AND COUNSEL OF RECORD:

340     Pursuant to the provisions of Federal Rule of Civil Procedure 36, it is hereby requested and demanded of
341     Defendant s(hereinafter "YOU" or "YOUR"), that YOU make admissions of the following statements of
342     fact which are materially pertinent to Plaintiff claims hereto in accordance with Rule 36, under which
343     rule of procedure this request for admissions is made, thereby answering the following facts in the
344     above-entitled and number cause, and that such answers be sworn to and filed promptly in the office of
345     the District Clerk where this cause is pending and a copy delivered to the writer within thirty (30) days
346     from the serving of this request upon you. Otherwise, each of the matter of which an admission is
347     requested and demanded shall be deemed admitted by you in accordance with Rule 36 of the Federal
348     Rules of Civil Procedure.

349     It is further anticipated that further discovery, independent investigations, legal research and analysis
350     will supply additional facts, add meaning to known facts, as well as establishing entirely new factual
351     conclusion and lawful contentions without presumptions of law.  All which may lead to substantial

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

352 additions to, changes in and variations from the contentions herein set forth.  The answers contain
353 herein are made in good faith effort to supply as much factual information and as much specification of
354 lawful contentions as is presently known which no way should be prejudiced in relation to further
355 discovery, research and/or analysis.

356

357 GENERAL OBJECTION

358 Defendants shall not base these responses on the assumptions that in propounding these requests for
359 admissions, the propounding party does not seek material protected against discovery by: (a) attorney-
360 client privilege; (b) the attorney work product doctrine; (c) litigation privilege; (d) constitutional or
361 statutory right of privacy; (e)confidentiality of statement or conduct made for settlement purposes; (f)
362 trade secrets or proprietary information or privilege; (g) or materials irrelevant to subject matter to this
363 litigation.

364 To re-apportion liability for predatory origination amongst parties to a home mortgage securitization
365 structure: aiding and abetting liability, civil co-conspirator liability, and joint venture liability.

366 It is well settled that where a conspiracy exits, liability for actions by one co-conspirator taken in
367 furtherance of the conspiracy can be attributed to every co-conspirator, making each equally liable for
368 the others' acts. Courts treat parties to a civil conspiracy as joint tortfeasors with joint and several
369 liability for all damages "ensuing or naturally flowing" from the act. Moreover, courts hold co-
370 conspirators liable irrespective of whether they are the direct actor, and irrespective of the degree of
371 involvement.

372 It is a long standing common law principle that a business or individual can be held liable for aiding and
373 abetting the wrongful acts of another. The Restatement of Torts (Second) suggests that, "for harm
374 resulting to a third person from the tortious conduct of another, a person is liable if he ... (b) knows that
375 the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to
376 the other so to conduct himself."

377

378 REQUESTS FOR ADMISSION

379 TRUTH OF FACTS

380 Admit that the following facts are true:

381 REQUEST NUMBER 1

382 Admit that YOU that as a Executive Officer are responsible for financial integrity of your company.

383 REQUEST NUMBER 2

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

384  Admit that YOU that you knew that mortgage brokers who originated loans did not lend any money to
385  the homeowners.

386  REQUEST NUMBER 3

387  Admit that YOU that you  were involved in"[a] securitization model – a system wherein parties that
388  provided the money for loans and drove the entire origination process from afar and behind the scenes
389  with undisclosed lenders and trustees to the homeowners.

390  REQUEST NUMBER 4

391  Admit that YOU that you were involved modus operandi of agreements of two or more businesses
392  starting at origination to servicing to foreclosing on homeowners property.

393  REQUEST NUMBER 5

394  Admit that YOU know when the title to the property is in dispute then the foreclosure should not
395  proceed, that it is a illegal act

396  REQUEST NUMBER 6

397  Admit that YOU that involved in fractionalized lending.

398  REQUEST NUMBER 7

399  Admit that YOU  knew or should have known off balance sheet reports prove this  there no debt as the
400  alleged loan has been paid.

401  REQUEST NUMBER 8

402  Admit that  securitization does nothing to abolish the basic right of a borrower to assert a defense to the
403  enforcement of a fraudulent loan, regardless of whether it was induced by another party involved in the
404  origination of the loan transaction, be it a broker, appraiser, closing agent, or another."

405  REQUEST NUMBER 9

406  Admit that you were part of an association of two or more persons designed to carry out a single
407  business enterprise for profit, for which purpose you combine property, money, effects, skill, and
408  knowledge to seize homeowners' equity.

409  REQUEST NUMBER 10

410  Admit that YOU were involved in joint ventures arise out of contractual relationships, be they oral,
411  written, express, or implied for  sharing of both profits and losses.

412  REQUEST NUMBER 11

413  Admit that the FAS 140 will prove that the claimants notes are paid shortly after the closing.

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

414 REQUEST NUMBER 12

415 Admit that YOU used the MERS (mortgage electronic registration system) to conceal transfers of notes
416 and property without disclosure and that you held membership in MERS.

417 REQUEST NUMBER 13

418 Admit that YOU had frequent contact between the "lender "and the broker, trustees as well as the
419 lender's insolvency in structuring the loan immediately preceding closing to carry out an enterprise for
420 profit; using undisclosed fees and accounts.

421 REQUEST NUMBER 14

422 Admit that you knew or should have known that many of mortgage brokers had no licenses in many of
423 the states they were doing business

424 REQUEST NUMBER 15

425 Admit that YOU profited by the different businesses involved in the conduit, including mortgage brokers,
426 lenders, MERS, servicers, sellers, underwriters, trustees, and trusts, or an SPV.

427 REQUEST NUMBER 16

428 Admit that YOU are fully responsible for the damages suffered by claimants.

429 REQUEST NUMBER 18

430 Admit that YOU agree to share in profits and losses, since you accept compensation out of the
431 proceeds of consumers' monthly payments.

432 REQUEST NUMBER 20

433 Admit that YOU do not have any defenses to the claims against YOU contained in Grantor's issuance of
434 the note.

435 REQUEST NUMBER 21

436 Admit that YOU agreed with GAP financing of fractionalization of notes.

437 REQUEST NUMBER 22

438 Admit that YOU sold loans along with many others into a trust pursuant to a pooling and servicing
439 agreement without disclosure to homeowner before foreclosing on their properties.

440 REQUEST NUMBER 23

441 Admit that YOU created a controversy in a fundamental term as who is the "creditor" due to fact that
442 you are not on the face of the evidence of indebtedness.

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

443 **REQUEST NUMBER 24**

444 Admit that your servicing practices can be intentionally abusive, when there is intent to obtain
445 unwarranted fees, or negligently, when, a servicer's records are so disorganized that borrowers are
446 regularly charged late fees even when mortgage payments were made on time.

447 **REQUEST NUMBER 25**

448 Admit that your servicers attempted to foreclose on property even when the original note was paid and
449 unaccounted for.

450 **REQUEST NUMBER 26**

451 Admit that the federal borrower in custody form proves that the bank was the BORROWER.

452 **EQUEST NUMBER 27**

453 Admit that you mismanagement accounts by frequently use negative suspense account for improper
454 crediting of late fees and pyramiding late fees by charging an account paid in full.

455 **REQUEST NUMBER 29**

456 Admit that you co-conspired with affiliate companies to enrich your corporation profits. .

457 **REQUEST NUMBER 30**

458 Admit that you used "unperfected" documentation in course of taking property from Grantors.

459

460

461

462 # RELIEF

463 Within a ninety day settlement or trial by jury, WE the people are seeking relief and remedy by

464 redeeming a treasury check for lawful money in three times the original note from reversionary

465 interest. That any liens held against the subject properties be release, the original "alleged" debt

466 rescission and the title be quieted. Also, properly dealing with the account to which a tax refund might

467 be electronically deposited in favor of the claimants. "Payment order" is required within 90 days of

468 summons.

Mass Claim
Filed:  December 22, 2014
Brooklyn District Court, NY

469

470                                                    Respectfully submitted by:  claimants

471

472    SIGNATURE to remain as true: *Connie P. Mele*
473    Print name:  *Connie P. Mele*
474    All rights are reserved and without recourse, per UCC 1-308
475    Address:     4161 Nichols court  Lilburn , GA  30047
476    Connie P. Mele

477
478    SIGNATURE to remain as true: *Michael Douglas*
479    Print name:  *Michael Douglas*
480    All rights are reserved and without recourse, per UCC 1-308
481    Address: _ Box  1024  Douglasville, GA 30133_
482    Michael Douglas

483

484
485    SIGNATURE to remain as true: *Yvonne Singleton*
486    Print name:  *Yvonne Singleton*
487    All rights are reserved and without recourse, per UCC 1-308
488    Address 879 Honeylane, Crete, Il.
489    Yvonne Singleton

490

491
492    SIGNATURE to remain as true: *Phillip Ellis*
493    Print name:  *Phillip Ellis*
494    All rights are reserved and without recourse, per UCC 1-308
495    Address:   Acquilla Dr.  Glenwood, Il.
496    Phillip Elllis

497
498    SIGNATURE to remain as true: *Janetta Bowen*
499    Print name:  *Janette Bowen*
500    All rights are reserved and without recourse, per UCC 1-308
501    Address: 4030 Weelaunee Road, Ellenwood, GA. _____
502    Janette Bowen

503

504
505    SIGNATURE to remain as true:_____
506    Print name: _____
507    All rights are reserved and without recourse, per UCC 1-308
508    Address: _____
509
510    SIGNATURE to remain as true:_____
511    Print name: _____
512    All rights are reserved and without recourse, per UCC 1-308

Mass Claim
Filed:  December 22, 2014
Brooklyn District Court, NY

513  Address: 640 E. 51 st  Apt 1W  Chicago, Il 60615
514  *[signature]*
515  Leveda Curry
516
517  SIGNATURE to remain as true: *Ellie Stewart*
518  Print name:  *ELLIE Stewart*
519  All rights are reserved and without recourse, per UCC 1-308
520  Address: *3473 S. King Dr. #101, Chicago Il 60616*
521  Ellie Stewart
522
523
524  SIGNATURE to remain as true: *Geane V Hewitt*
525  Print name:  *GEANE V. HEWitt*
526  All rights are reserved and without recourse, per UCC 1-308
527  Address:  *Po. Box 3196,  Duluth,  GA 30096*
528  Geane Hewitt Gittens
529
530
531  SIGNATURE to remain as true: *Deidre E Paris*
532  Print name: *DEIDrE E. Paris*
533  All rights are reserved and without recourse, per UCC 1-308
534  Address: 3672 Hawthorn Court  Auburn, Al.   36830
535   Deidre E. Paris
536
537
538  SIGNATURE to remain as true: *[signature]*
539  Print name:  *DELIAH BURROWES*
540  All rights are reserved and without recourse, per UCC 1-308
541  Address: *3473 S King Dr. #439, Chicago Ill. 60616-4108*
542   Delilah Burrowes
543
544   SIGNATURE to remain as true: *[signature]*
545  Print name:  *Idrissa Gaye*
546  All rights are reserved and without recourse, per UCC 1-308
547  Address: 4786 Golod Way Lithonia, GA 30038_
548  Idrissa Gaye
549
550  SIGNATURE to remain as true: *Charles Edward Sidden*
551  Print name: *CHARLES Edward Sidden*
552  All rights are reserved and without recourse, per UCC 1-308
553  Address: _____
554  Charles Sidden
555
556   SIGNATURE to remain as true:_____
557  Print name: _____

Page 19

Mass Claim
Filed: December 22, 2014
Brooklyn District Court, NY

558  All rights are reserved and without recourse, per UCC 1-308
559  Address: _____
560  
561
562  SIGNATURE to remain as true:_____
563  Print name: _____
564  All rights are reserved and without recourse, per UCC 1-308
565  Address: ___P O  box  30036-0844 decatur, ga 30036
566   Deborah Alex-Saunders
567
568  SIGNATURE to remain as true: _____
569  Print name: _____
570  All rights are reserved and without recourse, per UCC 1-308
571  Address: 12207 SOUTH  STEWART  AVE  CHICAGO, I  60628
572   Tres Peel

573

**Seal:** Deborah Ax-Saunders
"We The People"
Private Attorney General

Seal: Deborah Ax-Saunders
"We The People"
Private Attorney General



Mass Action Claim –Exhibit L
December 22, 2014

## I. LAW OF THE CASE

**The law of the case is decreed as follows:**

**It is the public policy of this state that public agencies exist to aid in the conduct of the people's business....The people of this state do not yield their sovereignty to the agencies which serve them. [ New York  Government Code, Section.]**

**In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business....The people of this State do not yield their sovereignty to the agencies which serve them. [ New York Government Code Section 54950.]**

**Laws, whether organic or ordinary, are either written or unwritten. [ New York  Code of Civil Procedure, Section 1895.]**

**A written law is that which is promulgated in writing, and of which a record is in existence. [ New York  Code of Civil Procedure, Section 1896]**

**The organic law is the Constitution of Government, and is altogether written. Other written laws are denominated statutes. The written law of this State is therefore contained in its Constitution and statutes, and in the Constitution and statutes of the United States. [ New York  Code of Civil Procedure, Section 1897]**

**Any judicial record may be impeached by evidence of a want of jurisdiction in the Court or judicial officer, of collusion between the parties, or of fraud in the party offering the record, in respect to the proceedings. [ New York  Code of Civil Procedure, Section 1916]**

**...at the Revolution, the sovereignty devolved on the people; and they are truly the sovereigns of the country, but they are sovereigns without subjects...with none to govern but**

Mass Action Claim –Exhibit L
December 22, 2014

themselves..... [CHISHOLM v. GEORGIA (US) 2 Dall 419, 454, 1 L
Ed 440, 455 @DALL (1793) pp471-472.]

The very meaning of 'sovereignty' is that the decree of the
sovereign makes law. [American Banana Co. v. United Fruit Co.,
29 S.Ct. 511, 513, 213 U.S. 347, 53 L.Ed. 826, 19 Ann.Cas.
1047.]

The people of this State, as the successors of its former
sovereign, are entitled to all the rights which formerly
belonged to the King by his prerogative. [Lansing v. Smith, 4
Wend. 9 (N.Y.) (1829), 21 Am.Dec. 89 10C Const. Law Sec. 298; 18
C Em.Dom. Sec. 3, 228; 37 C Nav.Wat. Sec. 219; Nuls Sec. 167; 48
C Wharves Sec. 3, 7.]

A consequence of this prerogative is the legal *ubiquity* of the
king. His majesty in the eye of the law is always present in all
his courts, though he cannot personally distribute justice.
(Fortesc.c.8. 2Inst.186) His judges are the mirror by which the
king's image is reflected. 1 Blackstone's Commentaries, 270,
Chapter 7, Section 379.

....This declaration of rights may not be construed to impair or
deny others retained by the people." [ New York  Constitution,
Article 1, Declaration Of Rights Sec. 24.]

The state cannot diminish rights of the people. [Hurtado v.
People of the State of  New York , 110 US 516.]

The assertion of federal rights, when plainly and reasonably
made, is not to be defeated under the name of local practice.
[Davis v. Wechsler, 263 US 22, 24.]

Where rights secured by the Constitution are involved, there can
be no rule making or legislation which would abrogate them.
[Miranda v. Arizona, 384 US 436, 491.]

Mass Action Claim –Exhibit L
December 22, 2014

**There can be no sanction or penalty imposed upon one because of this exercise of constitutional rights. [Sherer v. Cullen, 481 F 946.]**

**Whereas, the people of New York have presented a constitution....and which, on due examination, is found to be republican in its form of government.... [Act [of Congress] for the Admission of New York Into the Union, Volume 9, Statutes at Large, Page 452.]**

**Republican government. One in which the powers of sovereignty are vested in the people and are exercised by the people, either directly, or through representatives chosen by the people, to whom those powers are specially delegated. [In re Duncan, 139 U.S. 449, 11 S.Ct. 573, 35 L.Ed. 219; Minor v. Happersett, 88 U.S. (21 Wall.) 162, 22 L.Ed. 627." Black's Law Dictionary, Fifth Edition, p. 626.]**

**The State of New York is an inseparable part of the United States of America, and the United States Constitution is the supreme law of the land.  Constitution, Article 3, Sec. 1.]**

**This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby; any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. [Constitution for the United States of America, Article VI, Clause 2.]**

**Conspiracy against rights:  If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured - They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be**

Mass Action Claim –Exhibit L
December 22, 2014

fined under this title or imprisoned for any term of years or
for life, or both, or may be sentenced to death.  [18, USC 241]

Deprivation of rights under color of law:  Whoever, under color
of any law, statute, ordinance, regulation, or custom, willfully
subjects any person in any State, Territory, Commonwealth,
Possession, or District to the deprivation of any rights,
privileges, or immunities secured or protected by the
Constitution or laws of the United States, or to different
punishments, pains, or penalties, on account of such person
being an alien, or by reason of his color, or race, than are
prescribed for the punishment of citizens, shall be fined under
this title or imprisoned not more than one year, or both; and if
bodily injury results from the acts committed in violation of
this section or if such acts include the use, attempted use, or
threatened use of a dangerous weapon, explosives, or fire, shall
be fined under this title or imprisoned not more than ten years,
or both; and if death results from the acts committed in
violation of this section or if such acts include kidnapping or
an attempt to kidnap, aggravated sexual abuse, or an attempt to
commit aggravated sexual abuse, or an attempt to kill, shall be
fined under this title, or imprisoned for any term of years or
for life, or both, or may be sentenced to death.  [18, USC 242]

Property rights of citizens:  All citizens of the United States
shall have the same right, in every State and Territory, as is
enjoyed by white citizens thereof to inherit, purchase, lease,
sell, hold, and convey real and personal property.  [42 USC
1982]

Civil action for deprivation of rights:  Every person who, under
color of any statute, ordinance, regulation, custom, or usage,
of any State or Territory or the District of Columbia, subjects,
or causes to be subjected, any citizen of the United States or
other person within the jurisdiction thereof to the deprivation
of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in
an action at law, suit in equity, or other proper proceeding for
redress, except that in any action brought against a judicial
officer for an act or omission taken in such officer's judicial
capacity, injunctive relief shall not be granted unless a
declaratory decree was violated or declaratory relief was
unavailable.  For the purposes of this section, any Act of
Congress applicable exclusively to the District of Columbia
shall be considered to be a statute of the District of Columbia.
[42 USC 1983]

Conspiracy to interfere with civil rights:  Depriving persons of
rights or privileges:  If two or more persons in any State or
Territory conspire or go in disguise on the highway or on the
premises of another, for the purpose of depriving, either
directly or indirectly, any person or class of persons of the
equal protection of the laws, or of equal privileges and
immunities under the laws; or for the purpose of preventing or

Mass Action Claim –Exhibit L
December 22, 2014

hindering the constituted authorities of any State or Territory
from giving or securing to all persons within such State or
Territory the equal protection of the laws; or if two or more
persons conspire to prevent by force, intimidation, or threat,
any citizen who is lawfully entitled to vote, from giving his
support or advocacy in a legal manner, toward or in favor of the
election of any lawfully qualified person as an elector for
President or Vice President, or as a Member of Congress of the
United States; or to injure any citizen in person or property on
account of such support or advocacy; in any case of conspiracy
set forth in this section, if one or more persons engaged
therein do, or cause to be done, any act in furtherance of the
object of such conspiracy, whereby another is injured in his
person or property, or deprived of having and exercising any
right or privilege of a citizen of the United States, the party
so injured or deprived may have an action for the recovery of
damages occasioned by such injury or deprivation, against any
one or more of the conspirators.  [42 USC 1985(3)]

Action for neglect to prevent:  Every person who, having
knowledge that any of the wrongs conspired to be done, and
mentioned in section 1985 of this title, are about to be
committed, and having power to prevent or aid in preventing the
commission of the same, neglects or refuses so to do, if such
wrongful act be committed, shall be liable to the party injured,
or his legal representatives, for all damages caused by such
wrongful act, which such person by reasonable diligence could
have prevented; and such damages may be recovered in an action
on the case; and any number of persons guilty of such wrongful
neglect or refusal may be joined as defendants in the action;
and if the death of any party be caused by any such wrongful act
and neglect, the legal representatives of the deceased shall
have such action therefor, and may recover not exceeding $5,000
damages therein, for the benefit of the widow of the deceased,
if there be one, and if there be no widow, then for the benefit
of the next of kin of the deceased.  But no action under the
provisions of this section shall be sustained which is not
commenced within one year after the cause of action has accrued.
[42 USC 1986]

COURT. The person and suit of the sovereign; the place where the
sovereign sojourns with his regal retinue, wherever that may be.
[Black's Law Dictionary, 5th Edition, page 318.]

COURT. An agency of the sovereign created by it directly or
indirectly under its authority, consisting of one or more
officers, established and maintained for the purpose of hearing
and determining issues of law and fact regarding legal rights
and alleged violations thereof, and of applying the sanctions of
the law, authorized to exercise its powers in the course of law
at times and places previously determined by lawful authority.
[Isbill v. Stovall, Tex.Civ.App., 92 S.W.2d 1067, 1070; Black's
Law Dictionary, 4th Edition, page 425]

Mass Action Claim –Exhibit L
December 22, 2014

**COURT OF RECORD. To be a court of record a court must have four characteristics, and may have a fifth. They are:**

> **A. A judicial tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it [Jones v. Jones, 188 Mo.App. 220, 175 S.W. 227, 229; Ex parte Gladhill, 8 Metc. Mass., 171, per Shaw, C.J. See, also, Ledwith v. Rosalsky, 244 N.Y. 406, 155 N.E. 688, 689][Black's Law Dictionary, 4th Ed., 425, 426]**

> **B. Proceeding according to the course of common law [Jones v. Jones, 188 Mo.App. 220, 175 S.W. 227, 229; Ex parte Gladhill, 8 Metc. Mass., 171, per Shaw, C.J. See, also, Ledwith v. Rosalsky, 244 N.Y. 406, 155 N.E. 688, 689][Black's Law Dictionary, 4th Ed., 425, 426]**

> **C. Its acts and judicial proceedings are enrolled, or recorded, for a perpetual memory and testimony. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231]**

> **D. Has power to fine or imprison for contempt. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231.][Black's Law Dictionary, 4th Ed., 425, 426]**

> **E. Generally possesses a seal. [3 Bl. Comm. 24; 3 Steph. Comm. 383; The Thomas Fletcher, C.C.Ga., 24 F. 481; Ex parte Thistleton, 52 Cal 225; Erwin v. U.S., D.C.Ga., 37 F. 488, 2 L.R.A. 229; Heininger v. Davis, 96 Ohio St. 205, 117 N.E. 229, 231.][Black's Law Dictionary, 4th Ed., 425, 426]**

**The following persons are magistrates: ...The judges of the superior courts.... [ New York  Penal Code, Sec. 808.]**

**...our justices, sheriffs, mayors, and other ministers, which under us have the laws of our land to guide, shall allow the said charters pleaded before them in judgement in all their points, that is to wit, the Great Charter as the common law.... [Confirmatio Cartarum, November 5, 1297, *Sources of Our Liberties* Edited by Richard L. Perry, American Bar Foundation]**

**Henceforth the writ which is called Praecipe shall not be served on any one for any holding so as to cause a free man to lose his court.  [Magna Carta, Article 34].**

Mass Action Claim –Exhibit L
December 22, 2014

**If any claim, statement, fact, or portion in this action is held inapplicable or not valid, such decision does not affect the validity of any other portion of this action.**

**The singular includes the plural and the plural the singular.**

**The present tense includes the past and future tenses; and the future, the present.**

**The masculine gender includes the feminine and neuter.**

Mass Claim - NY Eastern District

COMMON LAW – COURT OF RECORD 12-22-2014

## TABLE OF CONTENTS

JURY TRIAL DEMANDED...................................................................................................page 1

JUDICIAL NOTE....................................................................................................................page 3

INTRODUCTION ............................................................................................................... page 3-4

NATURE OF ACTION ............................................................................................................page 5

PARTIES ................................................................................................................................page 5

The CLAIMANTS ...................................................................................................................page 6

The Defendants......................................................................................................................page 7

JURISDICTION AND VENUE..................................................................................................page 7

FACTUAL CLAIMS ......................................................................................................... page 8-10

CAUSE OF ACTION ...........................1...........................12..............................page 11-12

REQUEST FOR ADMISSIONS ....................................................................................... page 12-16

PRAYER FOR RELIEF ..........................................................................................................page 17

LAW OF THE CASE ..........................................................................................................Appendix i

EVIDENCE OF GRANTORS (INTERNATIONAL LAW) ...............................................Appendix ii

ALL RIGHTS RESERVED WITHOUT RECOURSE PER UCC 1-308 AT ALL TIMES.

*PLAINTIHS- RIDER*  *CLAIMANTS*

CERTIFICATION OF PROCESS

I CERTIFY THAT THE CLAIMS DOCUMENTS SHALL BE FORWARDED TO ALL PARTIES BY _____ DATE

_____ all rights reserved without recourse page 2

| | | | |
|---|---|---|---|
| | | | |
| Charles Sidden<br>3955 highway 152 west<br>China Grove, NC 28023 | TRES C. PEEL<br>12207 S. Stewart<br>Chicago, IL.<br>60628 | Idrissa Gaye<br>4786 Golod Way<br>Lithonia, GA 30038_ | |
| | Deidre E. Paris<br>3672 Hawthorn Court<br>Auburn, Al. 36830 | Janette Bowen<br>4030 Weelaunee Rd,<br>Ellenwood, GA | Connie P. Mele<br>4161 Nichols court<br>Lilburn, GA 30047 |
| Michael Douglas<br>Box 1024<br>Douglasville, GA<br>30133 | Leveda Curry<br>640 E. 51 st Apt 1W<br>Chicago, Il 60615 | Yvonne Singleton<br>879 Honeylane,<br>Crete, Il. 60417 | Phillip Elllis<br>328 West Arquilla Dr.<br>Glenwood, Il 60425 |
| Ellie Stewart<br>3473 s. King Dr. 101<br>CHICAGO, IL. 60616 | Delilah Burrowes<br>621 WISCONSIN AVE<br>OAK PARK, IL 60304 | Geane Hewitt Gittens<br>p.O. BOX 3196<br>Duluth, GA 30096 | DEBORAH H. SAUNDERS<br>BOX 30036-0844<br>Decatur, GA<br>30036 |
| | | | |

DEFENDANTS RIDER

## CERTIFICATION OF PROCESS

I CERTIFY THAT THE CLAIMS PETITION SHALL BE FORWARDED TO ALL PARTIES BY _____DATE

_____ all rights reserved without recourse

Marianne Lake
270 Park Avenue
New York, New York 10017

Bruce R. Thompson
100 North Tryon St
Charlotte, North Carolina 28202

Bruce Rose CEO
7 Greenwich Office Park
599 West Putnam Avenue
Greenwich, CT 06830

Robert Bentley
900 Ashwood Pwky,
Atlanta, GA 30338

Aleem Gillani,
303 Peachtree Street
N.E.
Atlanta, Georgia 30308

DARYL Bible
c/o BB&T
301 College Street
Greenville, SC 29601

James Mackey,
8200 Jones Branch Drive
McLean, VA 22102-311

Kelly King,
c/o BB&T
301 College Street
Greenville, SC 29601

John Shrewsberry,
530 5th Ave (45th Street),
New York, NY 10036,

John Gerspach
1000 TECHNOLOGY DR.
O'FALLON MISSOURI 63368

John V. Britti,
1661 Worthington Road, Ste 100
City West Palm Beach
Florida    Zip 3340

Christopher Halmy
440 South Church Street
Charlotte, NC 28202;

Janet McClusky
3879 Packard Rd
Ann Arbor, MI 48108

Paul Ince
1000 TECHNOLOGY DR.
O'FALLON MISSOURI 63368

ANDY CECERE, CFO
800 NICOLLET MALL
NEW YORK, NY 10005

Lewis Howard Wirshba
227 West Monroe Street, Chicago,
IL, 60606

TAJ J. Bindra
3351 Michelson Dr.
Irvine, CA 92612

Board of Governors
20th Street and Constitution
Avenue N.W.
Washington, D.C. 20551

WRI CAPITAL

3500 Piedmont Road  Suite 725

Atlanta  Georgia 30305

SELENE FINANCE

9990 RICHMOND

400 SOUTH  HOUSTON TX
77042-45

MARCUS SCHENCK, CFO
16 WALL STREET
NEW YORK, NY 10005

DARREN TANGEN, CFO
COLFIN A-1, GA LLC
40 TECHNOLOGY PKWY.
SUITE 300
NORCROSS, GA 30092

STEPHEN KRAUSE, CFO
16 WALL STREET
NEW YORK, NY 10005

Exhibits

LOAN NUMBER: 6779450664

# NOTE

10/31/05           GLENWOOD                                              IL
[Date]             [City]                                               [State]
328 ARQUILLA, GLENWOOD, IL 60425

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    189,635.00    (this amount is called
"Principal"), plus interest, to the order of the Lender. The Lender is   BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of        6.000      %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the        1ST      day of each month beginning on  DECEMBER 01, 2005     .
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before Principal. If, on     NOVEMBER 01, 2035         I still owe amounts under this Note, I
will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at   BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD
21297-1404                                          or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $      1,136.96      .

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS
KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY
NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.
I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE
FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I
OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE
PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL
PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER
AGREES IN WRITING TO THOSE CHANGES.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.0                % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

BS5N (0 10 1)

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
PHILLIP D ELLIS                                                -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower
                                                    (Sign Original Only)

Return To: LOAN # 6779450664
FL9-700-01-01
JACKSONVILLE POST CLOSING
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL  32256

Prepared By:
ROBERT FREEMAN
BANK OF AMERICA, N.A.
900 W. TRADE STREET
GATEWAY VILLAGE, 3RD FLOOR
CHARLOTTE, NC  28255-0001

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE

LOAN # 6779450664

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  OCTOBER 31, 2005                ,
together with all Riders to this document.
(B) "Borrower" is  PHILLIP D ELLIS AND MILINDA G. ELLIS

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is     BANK OF AMERICA, N.A.

Lender is a    NATIONAL BANKING ASSOCIATION
organized and existing under the laws of    THE UNITED STATES OF AMERICA

ILLINOIS — Single Family — Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014  1/01

 —6(IL)(0010)

Page 1 of 15          Initials: _PDC_
VMP MORTGAGE FORMS · (800)521-7291



CVIL 10/28/05 11:46 AM 6779450664

Lender's address is 900 W. TRADE STREET, GATEWAY VILLAGE, 3RD FLOOR, CHARLOTTE, NC 282550001

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated OCTOBER 31, 2005 . The Note states that Borrower owes Lender ONE HUNDRED EIGHTY NINE THOUSAND SIX HUNDRED THIRTY FIVE AND 00/100                                                          Dollars (U.S. $     189,635.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than          NOVEMBER 01, 2035          .

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider              ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                   ☐ Biweekly Payment Rider         ☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

MIN: 100488910105430853

# BALLOON NOTE
(Fixed Rate)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| October 24, 2006 | Chicago | Illinois |
|---|---|---|
| [Date] | [City] | [State] |

4447 S. Ellis Ave, Chicago, IL 60653
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $500,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Home123 Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.990 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on December 1, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 11/01/2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3351 Michelson Drive, Ste 400, Irvine, CA 92612

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $3,103.53

---

MULTISTATE BALLOON FIXED RATE NOTE - Single Family - FANNIE MAE UNIFORM INSTRUMENT

Page 1 of 3

-870N (0205)

VMP MORTGAGE FORMS - (800)521-7291

1010543085

Form 3260 1/ 01

Initials: _____

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen**        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

1010543085
Form 3260 1/ 01



Certified Forensic Loan Auditors

## EXHIBIT I

### Voluntary Lien Search

Transaction Details for
12209 S STEWART AVE, CHICAGO IL 60628
APN: 25-28-224-003-0000

**History Record #: 1**
*Foreclosure:*

| | |
|---|---|
| Recording Date: 06/10/2010 | Filing Date: 05/21/2010 |
| Document Number: 16135222 | Orig Recording Date: 05/14/2007 |
| Document Type: LIS PENDENS | Orig Doc Number: 13440057 |
| Trustee: | Trustee Phone: |
| Title Company: UNITED TITLE | Unpaid Balance: |
| Defendant: PEEL DENISE | |
| Defendant2: PEEL TRES | |

**History Record #: 2**
*Assignment.*

| | |
|---|---|
| Recording Date 05/28/2010 | Orig Recording Date: 05/14/2007 |
| Document Number: 14841071 | Orig Doc Number: 13440057 |
| Document Type: ASSIGNMENT OF MORTGAGE | |
| New Lender: GMAC MTG LLC | |
| Previous Lender: FIRST ADVANTAGE MTG LLC | |
| Borrower: PEEL TRES | |
| Borrower2: PEEL DENISE | |

**History Record #: 3**
*Sale/Transfer:*

| | |
|---|---|
| Recording Date: 05/14/2007 | Sale Date: 04/24/2007 |
| Document Number: 13440056 | Sale Price: |
| Document Type: WARRANTY DEED | Sale Type: |
| Title Company: PRAIRIE TITLE | |
| Buyer: PEEL TRES & DENISE | |
| Seller: PEEL DENISE | |

*Finance:*

| | |
|---|---|
| Recording Date: 05/14/2007 | Finance Type: NOMINAL |
| Document Number: 13440057 | Mortgage Loan Type: CONVENTIONAL |
| Document Type: MORTGAGE | Mortgage Term: 30 YEARS |
| Lender: FIRST ADVANTAGE MTG LLC | Mortgage Rate Type: |
| Loan Amount: $189,000 | Mortgage Rate. |
| Borrower: PEEL TRES | |
| Borrower: PEEL DENISE | |

**History Record #: 4**
*Release:*

| | |
|---|---|
| Recording Date: 07/18/2005 | Orig Recording Date: 04/16/2004 |
| Document Number: 19917021 | Orig Doc Number: 13415160 |
| Document Type: DEED OF RELEASE | |



**Certified Forensic Loan Auditors**

**History Record #: 5**

**Sale/Transfer:**

Recording Date: 05/13/2004
Document Number: 13415158
Document Type: SPECIAL WARRANTY DEED
Title Company: TICOR TITLE
Buyer: GRAFFT JOHN C
Seller: WACHOVIA LOAN TRUST 1997-1

Sale Date: 04/06/2004
Sale Price: $145,500
Sale Type:

**Finance:**

Recording Date: 05/13/2004
Document Number: 13415160
Document Type: MORTGAGE
Lender: CHASE MANHATTAN MTG
Loan Amount: $116,400
Borrower: GRAFFT JOHN C

Finance Type: RESALE
Mortgage Loan Type: CONVENTIONAL
Mortgage Term: 30 YEARS
Mortgage Rate Type: FIXED
Mortgage Rate:

**History Record #: 6**

**Sale/Transfer:**

Recording Date: 05/01/2003
Document Number: 12110174
Document Type: FORECLOSURE DEED
Title Company:
Buyer: WACHOVIA LOAN TRUST 1997-1 HM EQU
Seller: SHERIFF OF COOK COUNTY

Sale Date: 02/25/2003
Sale Price:
Sale Type:

**History Record #: 7**

**Finance:**

Recording Date: 11/21/1995
Document Number: 806263
Document Type: DEED OF TRUST
Lender: ASSOCIATES FIN INC
Loan Amount: $144,199
Borrower: PEEL TRES C
Borrower: PEEL DENISE

Finance Type: REFINANCE
Mortgage Loan Type: CONVENTIONAL
Mortgage Term:
Mortgage Rate Type:
Mortgage Rate:



**Certified Forensic Loan Auditors**

**History Record #: 8**
**Sale/Transfer:**

| | |
|---|---|
| Recording Date: **10/05/1995** | Sale Date: |
| Document Number: **679531** | Sale Price: **$145,000** |
| Document Type: **GRANT DEED** | Sale Type: |
| Title Company: | |
| Buyer: **PEEL TRES & DENISE** | |
| Seller: **MARSH WILLIE** | |

**Finance:**

| | |
|---|---|
| Recording Date: **10/05/1995** | Finance Type: **RESALE** |
| Document Number: **679532** | Mortgage Loan Type: **CONVENTIONAL** |
| Document Type: **MORTGAGE** | Mortgage Term: |
| Lender: **ASSOCIATES FIN INC** | Mortgage Rate Type: |
| Loan Amount: **$144,199** | Mortgage Rate: |
| Borrower: **PEEL TRES** | |
| Borrower: **PEEL DENISE** | |

**History Record #: 9**
**Sale/Transfer:**

| | |
|---|---|
| Recording Date: **07/18/1995** | Sale Date: |
| Document Number: **464502** | Sale Price: |
| Document Type: **FORECLOSURE DEED** | Sale Type: |
| Title Company: | |
| Buyer: **MAREN WILLIE** | |
| Seller: **BRAUN CAROL M** | |

**Voluntary Lien Date Ranges for COOK , IL**

| | Sales | Mortgages | Assignments | Releases | Foreclosures |
|---|---|---|---|---|---|
| Start Date | 01.01.0001 | 01.01.0001 | 01.01.0001 | 01.01.0001 | 01.01.0001 |
| End Date | 01.01.0001 | 01.01.0001 | 01.01.0001 | 01.01.0001 | 01.01.0001 |

www.docedge.com

1. Item 8.  Tres and Denise Peel acquired property for $145,000 on or about 10/5/95.

2. Items 7 and 8.  Prior borrower loan activity.

3. Items 4-6.  Prior foreclosure activity against an unknown party, John Grafft.  Mr. Grafft re-acquires property from a securitized Wachovia Bank trust following foreclosure.

4. Tres and Denise peel re-acquire property on an unknown date likely between 7/18/05 and 4/24/07 based on items 3 and 4.

5. Item 3.  Primary active loan that is the subject of this report.

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

Doc#:  0612408105 Fee: $54.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 05/04/2006 11:28 AM  Pg:  1 of 16

Prepared By:
CitiMortgage, Inc.
1101 W 31st Street
Suite 110
Downers Grove, IL  60515

—————————————————[Space Above This Line For Recording Data]—————————————————

# MORTGAGE

MIN   100011520035237116

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **April 27, 2006**
together with all Riders to this document.
(B) "Borrower" is  Delilah Burrowes, An Unmarried Person

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

002003523711
ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3014  1/01

-6A(IL) (0010)

Page 1 of 15                    Initials

VMP MORTGAGE FORMS - (800)521-7291

CitiMortgage 3.0.1.9 V2

(D) "Lender" is CitiMortgage, Inc.

Lender is a Corporation
organized and existing under the laws of New York
Lender's address is 1000 Technology Drive, O' Fallon, MO  63368-2240

(E) "Note" means the promissory note signed by Borrower and dated April 27, 2006
The Note states that Borrower owes Lender Eight Hundred Sixty Seven Thousand Nine Hundred

(U.S. $ 867,900.00                 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than June 1, 2036

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider        ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider   ☒ Other(s) [specify]
                                                        Schedule ''A''

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

002003523711
-6A(IL) (0010)                          Page 2 of 15                  Initials:            Form 3014  1/01
                                                                                        CitiMortgage 3.0.1.9 V2

TMC Loan No.  52592     **NOTE**     MIN  1000252-0000052592-8

August 6, 2008

CHINA GROVE       NORTH CAROLINA

[City]       [State]

3955 HWY 152 W     CHINA GROVE    NORTH CAROLINA    28023

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 200,000.00      (this amount is called "Principal"),

plus interest, to the order of the Lender. The Lender is  TERRACE MORTGAGE COMPANY .

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  6.375  % .
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

   (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the FIRST day of each month beginning on September 1, 2008 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on August 1, 2028 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make monthly payments at  900 ASHWOOD PARKWAY, SUITE 130, ATLANTA, GA 30338

or at a different place if required by the Note Holder.
   (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,476.46 .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.0  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
   (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
   (D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
   (E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**MULTISTATE FIXED RATE NOTE-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT** Form 3200 1.1
*(Page 1 of 2)*

Initials       Initials

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
CHARLES E SIDDEN                          -Borrower

_____ (Seal)
REBEKAH E. SIDDEN                         Co-Borrower

[Sign Original Only]

Pay to the order of
without recourse.

TERRACE MORTGAGE COMPANY

BY:_____

MULTISTATE FIXED RATE NOTE-Single Family-FNMA/FRLMC UNIFORM INSTRUMENT Form 3200 1.1

(Page 2 of 2)

LOAN NUMBER: 6779450664

# NOTE

10/31/05        GLENWOOD            IL
[Date]                         [City]                  [State]
328 ARQUILLA, GLENWOOD, IL 60425

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    **189,635.00**    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **BANK OF AMERICA, N.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    **6.000**    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the    **1ST**    day of each month beginning on **DECEMBER 01, 2005** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on    **NOVEMBER 01, 2035**    I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404**    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    **1,136.96** .

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.0         % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

BS5N (0101)

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
PHILLIP D ELLIS                                                -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower
                                                    (Sign Original Only)

Return To: LOAN # 6779450664
FL9-700-01-01
JACKSONVILLE POST CLOSING
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL  32256

Prepared By:
ROBERT FREEMAN
BANK OF AMERICA, N.A.
900 W. TRADE STREET
GATEWAY VILLAGE, 3RD FLOOR
CHARLOTTE, NC  28255-0001

―――――――――― [Space Above This Line For Recording Data] ――――――――――

LOAN # 6779450664

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  OCTOBER 31, 2005              ,
together with all Riders to this document.
(B) "Borrower" is  PHILLIP D ELLIS AND MILINDA G. ELLIS

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is    BANK OF AMERICA, N.A.

Lender is a    NATIONAL BANKING ASSOCIATION
organized and existing under the laws of   THE UNITED STATES OF AMERICA

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014 1/01

-6(IL)(0010)
Page 1 of 15                          Initials: _____
VMP MORTGAGE FORMS - (800)521-7291



CVIL 10/28/05 11:46 AM 6779450664

Lender's address is 900 W. TRADE STREET, GATEWAY VILLAGE, 3RD FLOOR, CHARLOTTE, NC 282550001

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated OCTOBER 31, 2005 . The Note states that Borrower owes Lender ONE HUNDRED EIGHTY NINE THOUSAND SIX HUNDRED THIRTY FIVE AND 00/100                    Dollars (U.S. $     189,635.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than     NOVEMBER 01, 2035 .

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Condominium Rider                  ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider    ☐ 1-4 Family Rider
☐ VA Rider                    ☐ Biweekly Payment Rider            ☐ Other(s) [specify]

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

MIN: 100488910105430853

# BALLOON NOTE
### (Fixed Rate)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| October 24, 2006 | Chicago | Illinois |
|---|---|---|
| [Date] | [City] | [State] |

4447 S. Ellis Ave, Chicago, IL  60653
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $500,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Homo123 Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.990 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st          day of each month beginning on December 1, 2006          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 11/01/2036          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3351 Michelson Drive, Ste 400, Irvine, CA 92612

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $3,103.53

---

**MULTISTATE BALLOON FIXED RATE NOTE - Single Family - FANNIE MAE UNIFORM INSTRUMENT**

Page 1 of 3

1010543085
Form 3260 1/ 01

-870N (0205)

VMP MORTGAGE FORMS - (800)521-7291

 Initials: _____

4.   **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5.   **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.   **BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.   **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.   **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.   **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:



**Certified Forensic Loan Auditors**

# EXHIBIT I

## Voluntary Lien Search

Transaction Details for
12209 S STEWART AVE. CHICAGO IL 60628
APN: 25-28-224-003-0000

**History Record #: 1**
*Foreclosure:*
Recording Date: 06/10/2010
Document Number: 16135222
Document Type: LIS PENDENS
Trustee:
Title Company: UNITED TITLE
Defendant: PEEL DENISE
Defendant2: PEEL TRES

Filing Date: 05/21/2010
Orig Recording Date: 05/14/2007
Orig Doc Number: 13440057
Trustee Phone:
Unpaid Balance:

**History Record #: 2**
*Assignment:*
Recording Date 05/28/2010
Document Number: 14841071
Document Type: ASSIGNMENT OF MORTGAGE
New Lender: GMAC MTG LLC
Previous Lender: FIRST ADVANTAGE MTG LLC
Borrower: PEEL TRES
Borrower2: PEEL DENISE

Orig Recording Date: 05/14/2007
Orig Doc Number: 13440057

**History Record #: 3**
*Sale/Transfer:*
Recording Date: 05/14/2007
Document Number: 13440056
Document Type: WARRANTY DEED
Title Company: PRAIRIE TITLE
Buyer: PEEL TRES & DENISE
Seller: PEEL DENISE

Sale Date: 04/24/2007
Sale Price:
Sale Type:

*Finance:*
Recording Date: 05/14/2007
Document Number: 13440057
Document Type: MORTGAGE
Lender: FIRST ADVANTAGE MTG LLC
Loan Amount: $189,000
Borrower: PEEL TRES
Borrower: PEEL DENISE

Finance Type: NOMINAL
Mortgage Loan Type: CONVENTIONAL
Mortgage Term: 30 YEARS
Mortgage Rate Type:
Mortgage Rate:

**History Record #: 4**
*Release:*
Recording Date: 07/18/2005
Document Number: 19917021
Document Type: DEED OF RELEASE

Orig Recording Date: 04/16/2004
Orig Doc Number: 13415160



**Certified Forensic Loan Auditors**

**History Record #: 5**
**Sale/Transfer:**
　　Recording Date: 05/13/2004
　Document Number: 13415158
　　Document Type: SPECIAL WARRANTY DEED
　　Title Company: TICOR TITLE
　　　　Buyer: GRAFFT JOHN C
　　　　Seller: WACHOVIA LOAN TRUST 1997-1

Sale Date: 04/06/2004
Sale Price: $145,500
Sale Type:

**Finance:**
　　Recording Date: 05/13/2004
　Document Number: 13415160
　　Document Type: MORTGAGE
　　　　Lender: CHASE MANHATTAN MTG
　　Loan Amount: $116,400
　　　Borrower: GRAFFT JOHN C

Finance Type: RESALE
Mortgage Loan Type: CONVENTIONAL
Mortgage Term: 30 YEARS
Mortgage Rate Type: FIXED
Mortgage Rate:

**History Record #: 6**

**Sale/Transfer:**
　　Recording Date: 05/01/2003
　Document Number: 12110174
　　Document Type: FORECLOSURE DEED
　　Title Company:
　　　　Buyer: WACHOVIA LOAN TRUST 1997-1 HM EQU
　　　　Seller: SHERIFF OF COOK COUNTY

Sale Date: 02/25/2003
Sale Price:
Sale Type:

**History Record #: 7**
**Finance:**
　　Recording Date: 11/21/1995
　Document Number: 806263
　　Document Type: DEED OF TRUST
　　　　Lender: ASSOCIATES FIN INC
　　Loan Amount: $144,199
　　　Borrower: PEEL TRES C
　　　Borrower: PEEL DENISE

Finance Type: REFINANCE
Mortgage Loan Type: CONVENTIONAL
Mortgage Term:
Mortgage Rate Type:
Mortgage Rate



**Certified Forensic Loan Auditors**

**History Record #: 8**
**Sale/Transfer:**
    Recording Date: **10/05/1995**
    Document Number: **679531**
    Document Type: **GRANT DEED**
    Title Company:
        Buyer: **PEEL TRES & DENISE**
        Seller: **MARSH WILLIE**

    Sale Date:
    Sale Price: **$145,000**
    Sale Type:

**Finance:**
    Recording Date: **10/05/1995**
    Document Number: **679532**
    Document Type: **MORTGAGE**
    Lender: **ASSOCIATES FIN INC**
    Loan Amount: **$144,199**
    Borrower: **PEEL TRES**
    Borrower: **PEEL DENISE**

    Finance Type: **RESALE**
    Mortgage Loan Type: **CONVENTIONAL**
    Mortgage Term:
    Mortgage Rate Type:
    Mortgage Rate:

**History Record #: 9**
**Sale/Transfer:**
    Recording Date: **07/18/1995**
    Document Number: **464502**
    Document Type: **FORECLOSURE DEED**
    Title Company:
        Buyer: **MAREN WILLIE**
        Seller: **BRAUN CAROL M**

    Sale Date:
    Sale Price:
    Sale Type:

**Voluntary Lien Date Ranges for COOK , IL**

|  | Sales | Mortgages | Assignments | Releases | Foreclosures |
|---|---|---|---|---|---|
| Start Date | 01.01.0001 | 01.01.0001 | 01.01.0001 | 01.01.0001 | 01.01.0001 |
| End Date | 01.01.0001 | 01.01.0001 | 01.01.0001 | 01.01.0001 | 01.01.0001 |

### www.docedge.com

1.  Item 8. Tres and Denise Peel acquired property for $145,000 on or about 10/5/95.

2.  Items 7 and 8. Prior borrower loan activity.

3.  Items 4-6. Prior foreclosure activity against an unknown party, John Grafft. Mr. Grafft re-acquires property from a securitized Wachovia Bank trust following foreclosure.

4.  Tres and Denise peel re-acquire property on an unknown date likely between 7/18/05 and 4/24/07 based on items 3 and 4.

5.  Item 3. Primary active loan that is the subject of this report.

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

Prepared By:
CitiMortgage, Inc.
1101 W 31st Street
Suite 110
Downers Grove, IL  60515

0612408105

**Doc#:  0612408105 Fee: $54.00**
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 05/04/2006 11:28 AM  Pg:  1 of 16

─────────────────── [Space Above This Line For Recording Data] ───────────────────

# MORTGAGE

MIN   100011520035237116

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated April 27, 2006
together with all Riders to this document.
(B) **"Borrower"** is Delilah Burrowes, An Unmarried Person

Borrower is the mortgagor under this Security Instrument.
(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

002003523711
ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS           Form 3014  1/01

-6A(IL) (0010)

Page 1 of 15                    Initials

VMP MORTGAGE FORMS - (800)521-7291



CitiMortgage 3.0.1.9 V2

(D) "Lender" is CitiMortgage, Inc.

Lender is a Corporation
organized and existing under the laws of New York
Lender's address is 1000 Technology Drive, O' Fallon, MO  63368-2240

(E) "Note" means the promissory note signed by Borrower and dated April 27, 2006
The Note states that Borrower owes Lender Eight Hundred Sixty Seven Thousand Nine Hundred

                                                                                              Dollars
(U.S. $ 867,900.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  June 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Schedule "A" |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

002003523711
6A(IL) (0010)                                    Page 2 of 15           Initials                    Form 3014  1/01
                                                                                                   CitiMortgage 3.0.1.9 V2

TMC Loan No.  52592

# NOTE

MIN   1000252-0000052592-8

August 6, 2008

CHINA GROVE
[City]

NORTH CAROLINA
[State]

3955 HWY 152 W

CHINA GROVE      NORTH CAROLINA     28023
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 200,000.00       (this amount is called "Principal"),

plus interest, to the order of the Lender. The Lender is   TERRACE MORTGAGE COMPANY       .

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  6.375   % .
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the FIRST day of each month beginning on September 1, 2008 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  August 1, 2028       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make monthly payments at  900 ASHWOOD PARKWAY, SUITE 130, ATLANTA, GA 30338

or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,476.46   .

## 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  4.0      % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

MULTISTATE FIXED RATE NOTE-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT Form 3200 1.1
*(Page 1 of 2)*

Initials _____        Initials _____

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
CHARLES E SIDDEN                          -Borrower

_____ (Seal)
REBEKAH E. SIDDEN                         Co-Borrower

*[Sign Original Only]*

Pay to the order of
without recourse.

TERRACE MORTGAGE COMPANY

BY:_____

**MULTISTATE FIXED RATE NOTE-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT Form 3200 1.1**

*(Page 2 of 2)*

LOAN NUMBER: 6779450664

# NOTE

| 10/31/05 | GLENWOOD | IL |
|---|---|---|
| [Date] | [City] | [State] |

328 ARQUILLA, GLENWOOD, IL 60425

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **189,635.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **BANK OF AMERICA, N.A.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.000** %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1ST** day of each month beginning on **DECEMBER 01, 2005**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **NOVEMBER 01, 2035** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,136.96** .

## 4. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THIS NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR IN THE AMOUNT OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
PHILLIP D ELLIS                                                        -Borrower

_____ (Seal)
                                                                       -Borrower

_____ (Seal)
                                                                       -Borrower

_____ (Seal)
                                                                       -Borrower

_____ (Seal)
                                                                       -Borrower

_____ (Seal)
                                                                       -Borrower

_____ (Seal)
                                                                       -Borrower

_____ (Seal)
                                                                       -Borrower
                                                            *(Sign Original Only)*

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.0         % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

BS5N (0 10 1)

Return To: LOAN # 6779450664
FL9-700-01-01
JACKSONVILLE POST CLOSING
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL  32256

Prepared By:
ROBERT FREEMAN
BANK OF AMERICA, N.A.
900 W. TRADE STREET
GATEWAY VILLAGE, 3RD FLOOR
CHARLOTTE, NC  28255-0001

──────────────── [Space Above This Line For Recording Data] ────────────────

# MORTGAGE

LOAN # 6779450664

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  OCTOBER 31, 2005              ,
together with all Riders to this document.
**(B) "Borrower"** is  PHILLIP D ELLIS AND MILINDA G. ELLIS

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is     BANK OF AMERICA, N.A.

Lender is a   NATIONAL BANKING ASSOCIATION
organized and existing under the laws of    THE UNITED STATES OF AMERICA

**ILLINOIS** – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**          **Form 3014  1/01**

VMP® –6(IL)(0010)
Page 1 of 15          Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

CVIL 10/28/05 11:46 AM 6779450664

Lender's address is 900 W. TRADE STREET, GATEWAY VILLAGE, 3RD FLOOR, CHARLOTTE, NC 282550001

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated OCTOBER 31, 2005 . The Note states that Borrower owes Lender ONE HUNDRED EIGHTY NINE THOUSAND SIX HUNDRED THIRTY FIVE AND 00/100                                    Dollars (U.S. $     189,635.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      NOVEMBER 01, 2035     . (E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

MIN: 100488910105430853

# BALLOON NOTE
(Fixed Rate)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

| October 24, 2006 | Chicago | Illinois |
|---|---|---|
| [Date] | [City] | [State] |

4447 S. Ellis Ave, Chicago, IL  60653
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $500,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Home123 Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.990 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1st          day of each month beginning on December 1, 2006 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on 11/01/2036          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3351 Michelson Drive, Ste 400, Irvine, CA 92612

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $3,103.53

**MULTISTATE BALLOON FIXED RATE NOTE** - Single Family - **FANNIE MAE UNIFORM INSTRUMENT**

Page 1 of 3

-870N (0205)

VMP MORTGAGE FORMS - (800)521-7291

1010543085
Form 3260 1/ 01

Initials: _____

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:



**Certified Forensic Loan Auditors**

# EXHIBIT I

## Voluntary Lien Search

Transaction Details for
**12209 S STEWART AVE. CHICAGO IL 60628**
APN: 25-28-224-003-0000

---

**History Record #: 1**
*Foreclosure:*
Recording Date: 06/10/2010
Document Number: 16135222
Document Type: LIS PENDENS
Trustee:
Title Company: UNITED TITLE
Defendant: PEEL DENISE
Defendant2: PEEL TRES

Filing Date: 05/21/2010
Orig Recording Date: 05/14/2007
Orig Doc Number: 13440057
Trustee Phone:
Unpaid Balance:

---

**History Record #: 2**
*Assignment.*
Recording Date: 05/28/2010
Document Number: 14841071
Document Type: ASSIGNMENT OF MORTGAGE
New Lender: GMAC MTG LLC
Previous Lender: FIRST ADVANTAGE MTG LLC
Borrower: PEEL TRES
Borrower2: PEEL DENISE

Orig Recording Date: 05/14/2007
Orig Doc Number: 13440057

---

**History Record #: 3**
*Sale/Transfer:*
Recording Date: 05/14/2007
Document Number: 13440056
Document Type: WARRANTY DEED
Title Company: PRAIRIE TITLE
Buyer: PEEL TRES & DENISE
Seller: PEEL DENISE

Sale Date: 04/24/2007
Sale Price:
Sale Type:

---

*Finance:*
Recording Date: 05/14/2007
Document Number: 13440057
Document Type: MORTGAGE
Lender: FIRST ADVANTAGE MTG LLC
Loan Amount: $189,000
Borrower: PEEL TRES
Borrower: PEEL DENISE

Finance Type: NOMINAL
Mortgage Loan Type: CONVENTIONAL
Mortgage Term: 30 YEARS
Mortgage Rate Type:
Mortgage Rate:

---

**History Record #: 4**
*Release:*
Recording Date: 07/18/2005
Document Number: 19917021
Document Type: DEED OF RELEASE

Orig Recording Date: 04/16/2004
Orig Doc Number: 13415160



**Certified Forensic Loan Auditors**

**History Record #: 5**
*Sale/Transfer:*
　　Recording Date: **05/13/2004**
　　Document Number: **13415158**
　　　Document Type: **SPECIAL WARRANTY DEED**
　　　　Title Company: **TICOR TITLE**
　　　　　Buyer **GRAFFT JOHN C**
　　　　　Seller: **WACHOVIA LOAN TRUST 1997-1**

Sale Date: **04/06/2004**
Sale Price: **$145,500**
Sale Type:

*Finance:*
　　Recording Date: **05/13/2004**
　　Document Number: **13415160**
　　　Document Type: **MORTGAGE**
　　　　Lender: **CHASE MANHATTAN MTG**
　　Loan Amount: **$116,400**
　　　Borrower: **GRAFFT JOHN C**

Finance Type **RESALE**
Mortgage Loan Type **CONVENTIONAL**
Mortgage Term: **30 YEARS**
Mortgage Rate Type: **FIXED**
Mortgage Rate

**History Record #: 6**

**Sale/Transfer:**
　　Recording Date: **05/01/2003**
　　Document Number: **12110174**
　　　Document Type: **FORECLOSURE DEED**
　　　Title Company:
　　　　　Buyer **WACHOVIA LOAN TRUST 1997-1 HM EQU**
　　　　　Seller: **SHERIFF OF COOK COUNTY**

Sale Date: **02/25/2003**
Sale Price:
Sale Type:

**History Record #: 7**
*Finance:*
　　Recording Date: **11/21/1995**
　　Document Number: **806263**
　　　Document Type: **DEED OF TRUST**
　　　　Lender: **ASSOCIATES FIN INC**
　　Loan Amount: **$144,199**
　　　Borrower: **PEEL TRES C**
　　　Borrower: **PEEL DENISE**

Finance Type **REFINANCE**
Mortgage Loan Type **CONVENTIONAL**
Mortgage Term:
Mortgage Rate Type:
Mortgage Rate



**Certified Forensic Loan Auditors**

History Record #: 8
*Sale/Transfer:*
    Recording Date: **10/05/1995**        Sale Date:
    Document Number: **679531**        Sale Price: **$145,000**
    Document Type: **GRANT DEED**        Sale Type:
    Title Company:
        Buyer: **PEEL TRES & DENISE**
        Seller: **MARSH WILLIE**

*Finance:*
    Recording Date: **10/05/1995**        Finance Type: **RESALE**
    Document Number: **679532**        Mortgage Loan Type: **CONVENTIONAL**
    Document Type: **MORTGAGE**        Mortgage Term:
        Lender: **ASSOCIATES FIN INC**        Mortgage Rate Type:
    Loan Amount: **$144,199**        Mortgage Rate:
        Borrower: **PEEL TRES**
        Borrower: **PEEL DENISE**

History Record #: 9
*Sale/Transfer:*
    Recording Date: **07/18/1995**        Sale Date:
    Document Number: **464502**        Sale Price:
    Document Type: **FORECLOSURE DEED**        Sale Type:
    Title Company:
        Buyer: **MAREN WILLIE**
        Seller: **BRAUN CAROL M**

**Voluntary Lien Date Ranges for COOK , IL**

|  | Sales | Mortgages | Assignments | Releases | Foreclosures |
|---|---|---|---|---|---|
| Start Date | 01/01/0001 | 01/01/0001 | 01/01/0001 | 01/01/0001 | 01/01/0001 |
| End Date | 01/01/0001 | 01/01/0001 | 01/01/0001 | 01/01/0001 | 01/01/0001 |

www.docedge.com

1. Item 8.  Tres and Denise Peel acquired property for $145,000 on or about 10/5/95.

2. Items 7 and 8.  Prior borrower loan activity.

3. Items 4-6.  Prior foreclosure activity against an unknown party, John Grafft.  Mr. Grafft re-acquires property from a securitized Wachovia Bank trust following foreclosure.

4. Tres and Denise peel re-acquire property on an unknown date likely between 7/18/05 and 4/24/07 based on items 3 and 4.

5. Item 3.  Primary active loan that is the subject of this report.

Return To:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO  63179-0021

Prepared By:
CitiMortgage, Inc.
1101 W 31st Street
Suite 110
Downers Grove, IL  60515

Doc#:  0612408105 Fee: $54.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 05/04/2006 11:26 AM  Pg:  1 of 16

---

[Space Above This Line For Recording Data]

# MORTGAGE

MIN   100011520035237116

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated April 27, 2006
together with all Riders to this document.
(B) "Borrower" is  Delilah Burrowes, An Unmarried Person

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

002003523711
ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3014  1/01

-6A(IL) (0010)

Page 1 of 15                    Initials:

VMP MORTGAGE FORMS - (800)521-7291

CitiMortgage 3.0.1.9 V2

(D) "Lender" is CitiMortgage, Inc.

Lender is a Corporation
organized and existing under the laws of New York
Lender's address is 1000 Technology Drive, O' Fallon, MO 63368-2240

(E) "Note" means the promissory note signed by Borrower and dated April 27, 2006
The Note states that Borrower owes Lender Eight Hundred Sixty Seven Thousand Nine Hundred

Dollars
(U.S. $867,900.00               ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than June 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] Schedule ''A'' |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

TMC Loan No.  52592     **NOTE**     MIN  1000252-0000052592-8

August 6, 2008     CHINA GROVE     NORTH CAROLINA

[City]     [State]

3955 HWY 152 W     CHINA GROVE    NORTH CAROLINA    28023

[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 200,000.00     (this amount is called "Principal"),

plus interest, to the order of the Lender. The Lender is  TERRACE MORTGAGE COMPANY  .

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  6.375  % .
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the FIRST day of each month beginning on  September 1, 2008 .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  August 1, 2028 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make monthly payments at  900 ASHWOOD PARKWAY, SUITE 130, ATLANTA, GA 30338

or at a different place if required by the Note Holder.
**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. $ 1,476.46 .

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charge for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  4.0  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
**(D) No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**MULTISTATE FIXED RATE NOTE**-Single Family-**FNMA/FHLMC UNIFORM INSTRUMENT  Form 3200 1.1**
*(Page 1 of 2)*

Initials      Initials

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
CHARLES E SIDDEN                  -Borrower

_____ (Seal)
REBEKAH E. SIDDEN                 Co-Borrower

*[Sign Original Only]*

Pay to the order of
without recourse.

TERRACE MORTGAGE COMPANY

BY:_____

**MULTISTATE FIXED RATE NOTE**-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT Form 3200 1.1

*(Page 2 of 2)*

12 22 2014 02:41 FAX

☑ 013

BK 4 7 4 5 6 PG 0 4 7 7

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.

2007 JAN -9 PM 2:00

TOM LAWLER, CLERK

PT-61 #67-2006-051184
GWINNETT CO. GEORGIA
REAL ESTATE TRANSFER TAX
$ 167.60
TOM LAWLER CLERK OF
SUPERIOR COURT

Return Recorded Document to:
Smith & Johnson, LLC
Attorneys at Law
P.O. Box 606
Buford, GA 30515

W A R R A N T Y   D E E D

STATE OF GEORGIA

COUNTY OF GWINNETT                                    File #: 06S-6499

This Indenture made this 15th day of December, 2006 between BOWEN FAMILY HOMES, INC. of the County of Gwinnett, State of Georgia, as party or parties of the first part, hereinafter called Grantor, and SAMUEL GITTENS , as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

W I T N E S S E T H that:  Grantor, for and in consideration of the sum of TEN AND 00/100'S ($10.00) Dollars and other good and valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee.

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 206 OF THE 6TH LAND DISTRICT OF GWINNETT COUNTY, GEORGIA, BEING KNOWN AND DESIGNATED AS TOWNHOME LOT 151 OF BRECKINRIDGE STATION AS SHOWN ON THAT CERTAIN FINAL PLAT OF BRECKINRIDGE STATION TOWNHOMES,  RECORDED AT PLAT BOOK 115, PAGES 244-245, GWINNETT COUNTY, GEORGIA RECORDS, REFERENCED TO SAID PLAT OF SURVEY AND THE RECORD THEREOF BEING HEREBY MADE FOR A MORE COMPLETE LEGAL DESCRIPTION.

This Deed is given subject to all easements and restrictions of record, if any.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoof of the said Grantee forever in FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, Grantor has hereunto set grantor's hand and seal this day and year first above written.

Signed, sealed and delivered in the presence of:

                                                    BOWEN FAMILY HOMES, INC.

_____                             By: _____ (Seal)
Witness                                             Joshua Bowie, Assistant Secretary

_____
Notary Public

0005608

12-22-2014 02:38 FAX                    RECEIVED  12/22/2014 03:07                    ☑003

50572
00651

**BK50572 PG0651**

<table>
<tr><td>

Recording requested by and when recorded,
Mail the Deed and tax statements to
Samuel Negil Gittens and Geane Hewitt Gittens
177 Governor Ave
West Babylon, NY 11704
Prepared by above
Original Record 672005-051184 - 01/08/2007

**QUITCLAIM DEED**
TRA:    N/A
MIN:    100032100001072668
APN:    R6206-366

</td><td>

FILED & RECORDED
**CLERK SUPERIOR COURT
GWINNETT COUNTY, GA.**

**2011 MAR -7  PM 3: 37**

**TOM LAWLER, CLERK**

**302928 -**

For Recorder's Use

</td></tr>
</table>

☐ This transfer is exempt from the documentary transfer tax
☐ The documentary transfer tax is $___-0-___ and is computed on
   ☑ the full value of the interest or property conveyed
   ☐ the full value less the liens or encumbrances remaining thereon at the time of sale
   The property is located in
   ☐ an unincorporated area
   ☑ the city of Duluth
   That at a bona fide gift and the Grantor(s) received nothing in return, RT Gst 11-911

**NOTICE OF CHANGE RE:**
GRANTOR(S)/TRUSTOR(S): Samuel -Negil: Gittens and Geane-Hewitt: Gittens

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged: Samuel N. and Geane H. Gittens, husband and wife, do hereby REMISE, RELEASE, GRANT, AND FOREVER QUITCLAIM to:

"Samuel N. Gittens and Geane H. Gittens"

the real property in the City of Duluth , County of Gwinnett, State of GA described as:

ALL THAT TRACK OR PARCEL OF LAND LYING AND BING IN LAND LOT 206 OF THE 6TH LAND DISTRICT OF THE GWINNETT COUNTY, GEORGIA, BEING KNOWN AND DESIGNATED AS TOWNHOME LOT 151 OF BRECKINRIDGE STATION AS SHOWN ON THAT CERTAIN FINAL PLAT OF BRECKINRIDGE STATION TOWNHOMES, RECORDED AT PLAT BOOK 115, PAGES 244-245, GWINNETT COUNTY, GEORGIA RECORDS, REFERENCED TO SAID PLAT OF SURVEY AND THE RECORD THEREOF BEING HEREBY MADE FOR A MORE COMPLETE LEGAL DESCRIPTION.

Commonly known as: 2103 Executive Dr . Duluth , GA 30096

See also Exhibit "A" attached hereto, as this QUITCLAIM DEED evidences the sole purpose of Notice Of Change in Trustee and Beneficiary appointments ONLY. Dated: 03/08/2011.

_____          _____
Samuel -Negil: Gittens                 Geane-Hewitt: Gittens

_____          _____
Witness                                Witness

**JURAT**                              ROSETTA RICHARDS
                                       NOTARY PUBLIC-STATE OF NEW YORK
                                       No. 01RI6090373
State of New York                      Qualified in Nassau County
County of Suffolk                      My Commission Expires April 14, 2011
Subscribed and sworn to (or affirmed) before me on this 3rd day of March
20 11 by _____ proved to me on the basis of
satisfactory evidence to be the person(s) who appeared before me.
Signature  Rosetta Richards                          (seal)

My Commission Expires:  April 14th, 2021

**0018325**                                             12 ☆

12 22 2014 02:41 FAX                    RECEIVED  12/22 2014 03:07                    @011

BK4871 2PG0290

FILED & RECORDED
CLERK SUPERIOR COURT
GWINNETT COUNTY, GA

08 MAR 18  PM 2:00

TOM LAWLER, CLERK

PT-61 # 067.2008-006831
GWINNETT CO. GEORGIA
REAL ESTATE TRANSFER TAX
$ none
TOM LAWLER CLERK OF
SUPERIOR COURT

Return Recorded Document to:
Samuel Gittens
Geane Hewitt-Gittens
13 Angievine Avenue
Hempstead, NY 11550

## DEED OF GIFT

**STATE OF GEORGIA,**

**COUNTY OF GWINNETT**

This Indenture made this **14th** day of **March**, 2008 between SAMUEL GITTENS, of the County of Gwinnett, State of Georgia, as party or parties of the first part, hereinafter called Grantor, and , SAMUEL GITTENS AND GEANE HEWITT-GITTENS as joint tenants with survivorship and not as tenants in common as parties of the second part, hereinafter called Grantees (the words "Grantor" and "Grantees" to include their respective heirs, successors and assigns where the context requires or permits).

W I T N E S S E T H that:  Grantor, for and in consideration of the sum of TEN AND 00/100'S ($10.00) Dollars and other good and valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipts whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantees, as joint tenants and not as tenants in common, for and during their joint lives, and upon the death of either of them, then to the survivor of them, in fee simple, together with every contingent remainder and right of reversion, and to the heirs and assigns of said survivor, the following described property:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 206 OF THE 6TH LAND DISTRICT OF GWINNETT COUNTY, GEORGIA, BEING KNOWN AND DESIGNATED AS TOWNHOME LOT 151 OF BRECKINRIDGE STATION AS SHOWN ON THAT CERTAIN FINAL PLAT OF BRECKINRIDGE STATION TOWNHOMES, RECORDED AT PLAT BOOK 115, PAGES 244-245, GWINNETT COUNTY, GEORGIA RECORDS, REFERENCED TO SAID PLAT OF SURVEY AND THE RECORD THEREOF BEING HEREBY MADE FOR A MORE COMPLETE LEGAL DESCRIPTION.

THIS CONVEYANCE is made subject to all zoning ordinances, easements and restrictions of record affecting said bargained premises.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, to the only proper use, benefit and behoove of the said Grantees, as joint tenants and not as tenants in common, for and during their joint lives, and upon the death of either of them, then to the survivor of them in FEE SIMPLE, together with every contingent remainder and right of reversion, and to the heirs and assigns of said survivor.

THIS CONVEYANCE is made pursuant to Official Code of Georgia Section 44-6-190, and it is the intention of the parties hereto to hereby create in Grantees a joint tenancy estate with right of survivorship and not as tenants in common.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons whomsoever.

IN WITNESS WHEREOF, the Grantor has hereunto set grantor's hand and seal this day and year first above written.

Signed, sealed and delivered in the presence of:

_____

_____ (Seal)
SAMUEL GITTENS

_____ (Seal)

NOTARY PUBLIC-STATE ROSETTA RICHARDS
NOTARY PUBLIC-STATE OF NEW YORK
Qualified in Nassau No. 01RI6090373
My Commission Qualified in Nassau County
My Commission Expires April 14, 2011

0028205

# NOTE



| December 15, 2006 | ATLANTA | Georgia |
|---|---|---|
| Date | City | State |

**2103 Executive Dr, Duluth GA 30096**
Property Address

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 33,500.00 (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is PINE STATE MORTGAGE CORPORATION . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder.

## 2. INTEREST

I will pay interest at a yearly rate of 8.25 %. Interest will be charged on unpaid principal until the full amount of principal has been paid.

## 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $ 251.67 I will make my payments on the 1st day of each month beginning on February 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on January 1, 2037 I still owe amounts under this Note; I will pay all those amounts, in full, on that date.

I will make my monthly payments at 6065 ROSWELL ROAD SUITE 300, ATLANTA GA 30328 or at a different place if required by the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any of my monthly payments by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment, but not less than U.S. $ 12.58 and not more than U.S. $ 12.58 I will pay this late charge only once on any late payment.

**(B) Notice from Note Holder**

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

**(C) Default**

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.